## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ANA FLAVIA DEMOURA LOCKWOOD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO. 18-40143-TSH** |
| | ) | |
| | ) | |
| **TODD MADEIROS, and** | ) | |
| **THE AUTO SHOPS LLC D/B/A** | ) | |
| **ALLTHINGSJEEP.COM,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF DECISION AND ORDER
### November 30, 2020

**HILLMAN, D.J.**

### Background

Ana Flavia De Moura Lockwood ("Lockwood" or "Plaintiff") has filed claims against Todd Madeiros ("Madeiros") and The Auto Shops, LLC d/b/a AllthingsJeep.com ("ATJ" and, together with Madeiros "Defendants") for Breach of Contract (Count I), Quantum Meruit/Unjust Enrichment (Count II), and Quasi-contract/Implied Contract (Count III) seeking payment of a bonus which she alleges Madeiros agreed to give her on the sale of ATJ. This Memorandum and Order of Decision addresses Defendants' Motion for Summary Judgment (Docket No. 47). For the reason set forth below, that motion is *granted***.**

**Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp*., 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences. " *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

## **Facts**[1]

### Lockwood's Employment with ATJ

Lockwood, who has a background in business administration, accounting, and finance was employed by ATJ, which sold Jeep products, from June 2010 to August 2018, when ATJ was sold to Turn5. From 2010 to April 2016, Lockwood was the director of operations of ATJ and from April 2016 until August 2018 she was the general manager. As general manager, Lockwood was responsible for reporting ATJ's profits and losses to Madeiros.

Over the course of her employment with Defendants, Lockwood's compensation increased substantially: Her gross wages, which were $20,250 in 2011, more than quadrupled to $83,760 in 2017, her last full year of employment. Additionally, in 2017, ownership of a car worth $24,000 was transferred to her. Aside from the fact that Lockwood did not receive the bonus at issue here, Lockwood believes she was fairly compensated by ATJ in 2017. Lockwood acknowledges that the company's failure to achieve some of its financial goals affected her earnings because she did not get proposed bonuses that were tied to the company's performance.

---

[1] This Court's Local Rules require that a party opposing summary judgment include "a concise statement of the material facts of record as to which it is contended there exists a genuine issue to be tried, *with page references to affidavits, depositions and other documentation.*" LR, D.Mass. 56.1. Plaintiff has disputed several material facts without proper citation to supporting documentation, that is, she has either failed to cite any supporting documentation or has cited to documentation that does not support her position. In these instances, I have accepted Defendants' asserted facts as true. Moreover, Plaintiff has asserted additional material facts which she contends are undisputed. To the extent that she has not cited to supporting documentation, I have not accepted those facts as true.

<u>The 2017 Agreement</u>

In 2017, Madeiros and Lockwood had a conversation in which he offered to pay her $250,000.00 if he was able to sell ATJ for $5,000,000. According to Lockwood, during other conversations Madeiros "probably" promised to pay her 5% of the ultimate sale price of the company. However, she was unable to provide any details about those alleged other conversations, including the year and date when they took place or any specifics as to what she and Madeiros discussed. More specifically, Lockwood states that Madeiros and she "probably" talked about the sale of the company somewhere between 2015 and the Spring of 2017 and the reference to her receiving a 5% bonus "probably built up [sic.] of several different conversations we had."

<u>The January 2018 Drake Bonus Agreement</u>

In January 2018, Madeiros had discussions with Drake Automotive Group ("Drake") regarding the potential sale of ATJ to Drake. The sale to Drake would have included an initial payment of $3,000,000, with an additional possible "earn out" payment of up to $1,000,000, based on incremental sales growth during the year following the sale. On January 2, 2018, Madeiros offered to pay Lockwood a bonus if the sale to Drake was completed and she remained employed following the sale. The proposed bonus would have consisted of a payment of $75,000 if she remained with Drake through a three to six-month post-sale transition period and another $100,000 if the sale to Drake included an "earn out provision" and if she remained employed by Drake for 12 months after the sale, and ATJ's revenues increased by $1,000,000. The offer was made in a phone conversation on January 2, 2018 and summarized in a text message Madeiros sent Lockwood on January 2, 2018. Lockwood did not accept this offer. Instead, on January 3, 2018, she e-mailed Madeiros a counterproposal of "4% of the sale price

4

under the same conditions attached to your sale." Madeiros did not accept Lockwood's counterproposal. However, later that same evening, Madeiros and Lockwood had a phone conversation during which they agreed on terms regarding a bonus to be paid if the sale to Drake was concluded and if Lockwood remained employed by Drake. Lockwood does not remember the specifics of the deal. She has testified that she was to receive a total of 4% of the sale price with an initial payout of $100,000. She has also testified that she was to receive 4.375% of the sale price consisting of an initial payout of $100,000 and total potential bonus payouts which would bring the total amount to $150,000 or $175,000.[2] For various reasons, the Drake deal fell through leaving ATJ to look for another buyer.

<u>The Alleged February 2018 Bonus Agreement</u>

In February 2018, after the Drake deal fell apart, Lockwood and Madeiros had a telephone conversation regarding her receiving a bonus if ATJ was sold to another company. Lockwood asked Madeiros for a written agreement and Madeiros responded that in his mind, the issue was already settled—it was the same deal they had with Drake. Lockwood stated that in her mind, this was about 4-4.3%. and Madeiros responded that they would have to determine the terms.   Lockwood asked Madeiros to get back to her and he said he would, but he never did. Based on that conversation, Lockwood understood that the that the bonus was set to about 4% of the sale price, but they would further negotiate the payment terms which would depend on the details of the sale.

---

[2] She would receive the initial $100,000 payout if she remained employed by Drake for four months after the sale, and if she remained employed by Drake for a year after the sale and the company achieved incremental sales grown of $1,000,000, she would receive an additional $50,000 or $75,000.

<u>The June 2018 Bonus Offer for the Turn5 Deal</u>

In connection with the potential sale of ATJ to Turn5, Madeiros offered Lockwood a bonus if she remained an employee of Turn5 following the sale. Specifically, on June 19, 2018, during a conference call between Madeiros, Lockwood and another employee, Madeiros offered Lockwood a $75,000 bonus in connection with the sale to Turn5, and stated that payment was conditioned on Lockwood remaining an employee of Turn5 for four to six months after completion of the sale. Lockwood did not accept this offer and she and Madeiros did not reach an agreement regarding a potential bonus upon the consummation of a sale to Turn 5. After June 19, Lockwood stopped "engaging" with Madeiros and all future communications took place with her attorney. Lockwood never accepted the $75,000 offer.

In August 2018, ATJ was sold to Turn5 for $2,253,881.56, with $1,008,354.67 to be paid at closing, and the remainder to be paid in monthly installments over a 36-month period, subject to an adjustment of the purchase price based on a reduction in inventory value as of the date of the closing. There was also a potential "earn out" payment of up to $600,000. Turn5 felt that Lockwood had an intimate knowledge of ATJ which would assist in making the acquisition successful and therefore, payed her a $75,000 retention bonus to remain with the company after the sale.

<u>Consideration for Lockwood's Entitlement to a Bonus</u>

Lockwood contends that the bonus she is due (an amount which ranges from 4% to 5% of the sales price) is payment for her "sweat equity," *i.e.,* the services she provided to ATJ during the years prior to the sale. Additionally Lockwood contends that she contributed a "lot" to the value of ATJ, but is not able to quantify the amount of that value.

**Discussion**

The Defendants seek summary judgment on Lockwood's breach of contract claim on the grounds that: (1) she has failed to establish that the parties had agreed to the essential terms sufficient to create an enforceable agreement, (2) any such agreement fails for lack of consideration, and (3) if the parties' did create an enforceable contract, she cannot establish that they breached its terms. Defendants argue that Lockwood's quantum meruit claim fails as a matter of law because she cannot establish all of the elements of such claim, *i.e.*, that she conferred a measurable benefit upon ATJ, that she reasonably expected to be compensated by the Defendants, and Defendants accepted the benefit with knowledge, actual or chargeable, of her reasonable expectation. As to Lockwood's quasi/implied contract claim, Defendants assert that they are entitled to summary judgment as a matter of law because Lockwood cannot establish that they were unjustly enriched at her expense or that she suffered an unjust detriment.

Lockwood, on the other hand, acknowledges that the parties had not agreed to all material facts regarding the bonus (the amount of the bonus repeatedly changed over time). She argues, however, that there was at all times a mutual agreement that a bonus would be paid and that whether the parties had an enforceable oral contract and the determination of the terms of any such contract are questions of fact for the jury. She further argues that she continued to work for Madeiros based on his promise that she would get a bonus upon the sale of ATJ. As to her unjust enrichment and quasi/implied contract claims, she argues that Madeiros will be unjustly enriched if he is not required to pay her a bonus because as a key employee, she enhanced the value of the company and therefore, increased the sale price. She then argues that because she has made out a

7

claim unjust enrichment and/or quasi/implied contract, Defendant is estopped from denying the existence of a contract.[3]

<u>The Breach of Contract Claim</u>

To prevail on a breach of contract claim under Massachusetts law, "a plaintiff must show: 1) the existence of a valid and binding contract, 2) that the defendant breached the terms of the contract, and 3) that the plaintiff has suffered damages from the breach." *Pizzeria Uno Corp. V. Pizza by Pubs, Inc.,* 2011 WL 4020845, at *3 (D.Mass. Sept.9, 2011).

> As to the first element—i.e., whether there is a contract—
> [a]ll the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined. At base, the parties must have reached agreement on the material terms of the contract. A lack of definiteness in an agreement might be based on a lack of specificity regarding the time of performance, price to be paid, work to be done, or property to be transferred and will vary based on the facts of the individual case. The issue of [w]hether an alleged contract is legally enforceable in light of indefinite terms is a question of law for the court.

*Cooper v. Kenexa Tech., Inc.*, No. CIV.A. 10-12189-DJC, 2012 WL 2946012, at *4 (D. Mass. July 19, 2012). Simply put, there was never a contract between the parties. Both Lockwood and Madeiros acknowledge that sometime around 2017, Madeiros told Lockwood that he would pay her a bonus of $250,000 *if* the company sold for $5,000,000 and *may* have said that he would pay her 5% of the ultimate sale price. However, even as to this alleged agreement, Lockwood cannot provide specifics as to when the alleged bonus would be paid, how it would be paid and what consideration there was for the alleged bonus.[4]

---

[3] Plaintiff has not asserted a claim for promissory estoppel, and it is not entirely clear how her "estoppel" argument relates to her unjust enrichment and quasi/implied contract claims.

[4] As to the 2017 agreement, there are no allegations that Plaintiff would continue to work for ATJ through the sale or perhaps beyond to assist with the transition.

In January 2018, Madeiros entered negotiations to sell ATJ to Drake for between $3,000,000 and $4,000,000. Madeiros offered to pay Lockwood a bonus if the sale to Drake was completed and she remained employed following the sale. More specifically, he proposed that Lockwood would receive $75,000 if she remained with Drake through a three to six-month post-sale transition period and another $100,000 if the sale to Drake included an "earn out provision" and she remained employed by Drake for 12 months after the sale, and ATJ's revenues increased by $1,000,000. The offer was made in a phone conversation and summarized in a text message from Madeiros to Lockwood. However, Lockwood did not accept this offer. Instead, the next day she e-mailed a counteroffer to Madeiros of "4% of the sale price under the same conditions attached to your sale."   Madeiros and Lockwood had a phone conversation later that same evening during which they agreed on terms regarding a bonus to be paid if the sale to Drake was concluded and if Lockwood thereafter remained employed by Drake. However, Lockwood does not remember and cannot articulate the specifics of the alleged deal and, in any event, the Drake deal never closed.

In February 2018, after the Drake deal had fallen apart, Lockwood and Madeiros had a telephone conversation regarding her receiving a bonus if ATJ was sold to another company. Lockwood asked Madeiros for a written agreement and Madeiros responded that in his mind, the issue was already settled—it was the same deal they had with Drake. Lockwood stated that in her mind, this was about 4-4.3%. and Madeiros responded that they would have to determine the terms. Lockwood asked Madeiros to get back to her and he said he would, but he never did. Based on that conversation, Lockwood understood that the that the bonus was set to *about 4%* of the sale price, *but they would further negotiate the payment terms which would depend on the details of the sale.*

9

Later in 2018, Madeiros and ATJ began to negotiate a sale to Turn5. Madeiros offered Lockwood a bonus if she remained an employee of Turn5 following the sale. Specifically, on June 19, 2018, during a conference call between Madeiros, Lockwood and another employee, Madeiros offered Lockwood a $75,000 bonus in connection with the sale to Turn5, and stated that payment was conditioned on Lockwood remaining an employee of Turn5 for four to six months. Lockwood did not accept this offer and she and Madeiros never reached an agreement regarding a potential bonus upon the consummation of a sale to Turn 5. In August 2018, ATJ was sold to Turn5 and Lockwood received a retention bonus of $75,000 from Turn5 for staying on after the sale and assisting with the transition.

While it is clear from the foregoing summation of the facts that Lockwood and Madeiros contemplated she would receive a bonus upon the sale of ATJ, the terms changed with each of the putative purchases. It is equally clear that they never reached agreement on *any* of the material terms sufficient to create a binding contract. More specifically, there was no agreement regarding the amount of the bonus (which by Lockwood's own testimony fluctuated from between 4% to 5% and *may* have been based on the purchase price), the timing of the payment of the bonus and whether Lockwood would be required to remain employed by the buyer for a period of time for all or part of the bonus to vest. Put succinctly, "the agreement was 'silent' on material matters as to the relative obligations of the parties." *Cooper*, 2012 WL 2946012, at *5. Accordingly, summary judgment shall enter for Defendants on Count I.

Unjust Enrichment/Quantum Meruit[5]

*Unjust Enrichment*

Under Massachusetts law, claims for quantum meruit and unjust enrichment are treated similarly, that is, they have essentially the same elements. *Scarpaci,* 212 F. Supp. 3d 246 at 253 n.8. More specifically, unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass.App.Ct. 324, 329, 833 N.E.2d 171 (2005) (citation to quoted case omitted). To succeed on her claim for unjust enrichment, Lockwood must show: (1) she conferred a benefit upon the Defendants, (2) an appreciation or knowledge by Defendants of the benefit, and (3) that under the circumstances, the Defendants acceptance or retention of the benefit would be inequitable without payment for its value. *See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir.2009). To establish a claim for quantum meruit, Lockwood must prove: (1) she rendered services to the Defendants, (2) they accepted such services, (3) she expected reasonable compensation, and (4) the reasonable value of the services she provided. *Nardone v. LVI Servs., Inc.*, 94 Mass. App.Ct. 326, 333, 113 N.E.3d 854, 861 (Mass.App.Ct. 2016), *review denied sub nom. Nardone v. Cutrone*, 481 Mass. 1107, 121 N.E.3d 697 (2019). The "'reasonable benefit' bestowed by the plaintiff must be 'measurable.' The plaintiff is not required to show that 'the defendant subjectively ... expected to pay the plaintiff,' but rather that 'a reasonable person in

---

[5] Had this Court found that the parties had a valid oral contract, then Lockwood would have a remedy at law which would have precluded her from pursuing a claim for unjust enrichment/quantum meruit. *See Scarpaci v. Lowe's Home Ctr., LLC,* 212 F. Supp. 3d 246, 252-533 (D. Mass. 2016). Defendants acknowledge that given that I have found there was no contract, Lockwood is not precluded from pursuing such claims. Given this concession, I will assume that Lockwood's unjust enrichment claim is not barred. *But see Id.* at 253 n.7 ("adequate remedy at law" refers to the existence of legal (as opposed to equitable) theory by which the plaintiff may seek recovery; it does not, however, require the existence of a legal theory under which the plaintiff is ultimately successful on obtaining a recovery thus, that breach of contract claim fails does not make that claim "inadequate.")

[the defendant's] position would have expected to pay for the services accepted.'" *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112, 141 (D. Mass. 2014) *aff'd,* 873 F.3d 21 (1ˢᵗ Cir. 2017).

Lockwood's unjust enrichment/quantum meruit claims fail with respect to the same element— that is, she cannot prove that she bestowed benefit or reasonable services upon Madeiros that are quantifiable. On the contrary, the record evidence simply shows that she continued to work for Madeiros/ATJ until the company was sold and received her regular compensation during that period. After the sale was completed, she worked at least a period of time for Turn5 (for which she was compensated by Turn5 and received a bonus). There is no evidence that she increased the sale value of the company or was even actively involved in any matters related to the sale such as conducting due diligence, preparing financials, participating in negotiations or the like. Indeed, at her deposition when asked to quantify what she did to benefit the Defendants during this period she testified she added a lot of "value" to ATJ but could not quantify the amount of value she allegedly added. *See Nardone*, 94 Mass. App. Ct. at 335, 113 N.E.3d 854 (the reasonable value of the services, that is, the value of the benefit conferred, is the appropriate measure of damages, *i.e.,* restitution). More to the point, she has not shown that the sale would not have gone through without the services she provided, or that anything she did increased the amount which Defendants received upon the sale of the company. Moreover, Lockwood suggests she is entitled to recover for her sweat equity," *i.e.,* the services she provided to ATJ during the years prior to the sale. However, she was compensated for those services and has not pointed to any services she performed in relation to the sale of ATJ that were outside of her normal duties, *i.e.*, that she was required to do as part of those duties. And, as I have previously intimated, she has not pointed to

12

any *new* benefit that Defendants received because of her continuing to work at ATJ through the sale date.

Implied Contract

"A contract implied in fact comes into being when, notwithstanding the absence of a written or verbal agreement, the conduct or relations of the parties imply the existence of a contract." *Woodward v. Emulex Corp.,* 854 F. Supp. 2d 149, 161 (D. Mass. 2012), *aff'd,* 714 F.3d 632 (1st Cir. 2013)(citing *Popponesset Beach Ass'n v. Marchillo,* 39 Mass.App.Ct. 586, 592, 658 N.E.2d 983 (1996)). "An implied contract can be created where negotiations, specificity and detail exist such that an employee could have reasonably expected that his employer had committed to certain stated terms." *Grol v. Safelite Grp., Inc.*, 297 F. Supp. 3d 241, 247 (D. Mass. 2018)(citing *O'Brien v. New England Telephone & Telegraph Company*, 422 Mass. 686, 691–92, 664 N.E.2d 843 (1996)). Generally, whether an implied contract exists is a question for the factfinder. *Id.*

In this case, the back and forth between the parties regarding the amount of the bonus to be paid to Lockwood as well as the conditions precedent to the vesting of such bonus and the parties' rejections of each other various proposals dispel the notion that the there was an unqualified offer of a bonus made by the Defendants to Lockwood. *Cf. Beacon Wool Corp. v. Johnson*, 331 Mass. 274, 280–81, 119 N.E.2d 195, 199 (1954)(bonuses, whether or not they were considered by the recipients as an essential part of their compensation were in the nature of gratuities whose payment was at least as much based on plan to share company's profits with employees, as to pay employees additional compensation for services and, at most, were increased compensation for services already rendered for prescribed salaries where there was no agreement express or implied that additional compensation be paid. Thus, company was under

13

no contractual obligation to pay employees bonuses thereby negating existence of either an express or an implied contract). Put another way, based on the undisputed record facts, I find as a matter of law that no such contract exists because Lockwood could not reasonably have expected that Madeiros had committed to the amount of the bonus or the terms on which it would be paid. Accordingly, summary judgment shall enter for Defendants on this claim.

<u>**Conclusion**</u>

It is hereby Ordered that:

Defendants' Motion for Summary Judgment (Docket No. 47) is ***granted***.

Judgment shall enter for the Defendants.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**